RACHELE R. BYRD (190634)
byrd@whafh.com
BRITTANY N. DEJONG (258766)
dejong@whafh.com
**WOLF HALDENSTEIN ADLER
  FREEMAN & HERZ LLP**
750 B Street, Suite 1820
San Diego, CA 92101
Telephone: 619/239-4599
Facsimile:  619/234-4599

*Counsel for Plaintiff*

# UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

## SOUTHERN DIVISION

| | |
|---|---|
| TOPPINGS PATH HOLDING, LLC, on behalf of itself and all others similarly situated, | ) ) ) ) Case No. |
| Plaintiff, | ) ) **CLASS ACTION COMPLAINT** |
| v. | ) ) ) <u>DEMAND FOR JURY TRIAL</u> |
| FIRST AMERICAN FINANCIAL CORPORATION, FIRST AMERICAN TITLE COMPANY, and FIRST AMERICAN TITLE INSURANCE COMPANY, | ) ) ) ) ) ) |
| Defendants. | ) ) |

Plaintiff Toppings Path Holding, LLC ("Plaintiff"), for its class action complaint, alleges upon personal knowledge as to itself and its own actions, and upon information and belief, including the investigation of counsel, as to all other matters as follows:

## NATURE OF ACTION

1.      Plaintiff asserts this class action against Defendants First American Financial Corporation, First American Title Company, and First American Title Insurance Company (collectively, "First American" or "Defendant") for its failure to exercise reasonable care in securing and safeguarding its customers' sensitive personal information ("SPI"), including, but not limited to, the names, bank account numbers, wire transaction records, financial records, driver's license images and information, financial and incorporation records, social security numbers ("SSNs") and tax identification numbers ("TIN") of millions of businesses and individuals who have used First American's title insurance services since approximately 2003.

2.      On May 24, 2019, noted security expert Brian Krebs revealed that a careless design aspect in the web presence of First American could allow anyone who had knowledge of the URL of at least one stored document on First American's servers to access more than 885 million mortgage documents, ranging from 2003 until the present.[1]

3.      Since this situation was caused not by a hacker-created breach, but rather in a carelessly designed aspect of First American's website, this information was publicly available to anyone with the correct web address, or URL.   First American has no way of knowing how many people have accessed a given customer's records over the years, nor how many times such records have been

---

[1]      *See First American Financial Corp. Leaked Hundreds of Millions of Title Insurance Records*, KREBSONSECURITY.COM, https://krebsonsecurity.com/2019/05/first-american-financial-corp-leaked-hundreds-of-millions-of-title-insurance-records/ (last visited May 28, 2019).

copied and/or archived.   As *Forbes* magazine stated, "As a result, anyone who discovers a link to one document can view it—and can discover any of the other documents hosted on the site by simply modifying the link."[2]

4.      What is more, bots such as The Internet Archive's Wayback Machine routinely collect and index web pages from all over the internet.  Often this is not done maliciously, simply as a way of copying data for future use by researchers or the curious public.  Since First American's documents were publicly available for at least 16 years, there is simply no way to know how many times each page was indexed or copied and may still be available on the internet.

5.      First American has stated, "We are currently evaluating what effect, if any, this had on the security of customer information."[3]  The company further stated that it had retained a forensic investigator to review any unauthorized access, but has not offered any assistance at this point to Plaintiff or any other class member.

6.      Plaintiff and members of the Class (defined *infra*) must now guard against both the unauthorized use of their financial information and against identity theft, including but not limited to unauthorized bank transfers, fraudulent driver's licenses or identity documents, unauthorized bank accounts or credit cards being opened in their name, and fraudulent tax returns.

## **THE PARTIES**

7.      Plaintiff Toppings Path Holding, LLC is a New York limited liability company located in Nassau County, New York.  In April 2016, Plaintiff purchased a

---

[2]      AJ Dellinger, *Understanding The First American Financial Data Leak: How Did It Happen And What Does It Mean?*, FORBES.COM, https://www.forbes.com/sites/ajdellinger/2019/05/26/understanding-the-first-american-financial-data-leak-how-did-it-happen-and-what-does-it-mean/#cef4314567f6 (last visited May 28, 2019)

[3]      Zack Whittaker, *First American site bug exposed 885 million sensitive title insurance records*, TECHCRUCH.COM https://techcrunch.com/2019/05/24/first-american-millions-sensitive-records/ (last visited May 28, 2019).

property in Nassau County, New York.  As part of the transaction, Plaintiff purchased an owner's title insurance policy from Defendant First American Title Insurance Company through its non-party title insurance agent, Closing USA, LLC. Plaintiff provided at least the principal's driver's license image as well as the Plaintiff's IRS Form SS-4 (containing the Plaintiff's TIN) to Closing USA, LLC.

8.    Defendant First American Financial Corporation is a Delaware corporation with its principal place of business located at 1 First American Way, Santa Ana, California 92707.

9.    Defendant First American Title Company is a California corporation with its principal place of business located at 1 First American Way, Santa Ana, California 92707.  First American Title Company is a subsidiary of First American Financial Corporation.

10.   Defendant First American Title Insurance Company is a Nebraska corporation with its principal place of business located at 5017 Leavenworth St., Suite 100, Omaha, Nebraska, 68106.  Its California address is 1 First American Way, Santa Ana, California 92707.  First American Title Insurance Company is a subsidiary of First American Financial Corporation.

## JURISDICTION AND VENUE

11.   This Court has jurisdiction over this action under the Class Action Fairness Act, 28 U.S.C. § 1332(d).  There are at least 100 members in the proposed class, the aggregated claims of the individual class members exceed the sum or value of $5,000,000, exclusive of interest and costs, and this is a class action in which Defendant and members of the proposed plaintiff classes, including the named Plaintiff, are citizens of different states.

12.   Venue is proper in this District pursuant to 28 U.S.C. § 1391 because First American Financial Corporation and First American Title Company have their principal place of business in this District, a substantial part of the events or omissions giving rise to Plaintiff's claims occurred here, and Defendants First

1  American Financial Corporation and First American Title Company are corporations
2  subject to personal jurisdiction in this District and, therefore, reside here for venue
3  purposes.

### FACTUAL ALLEGATIONS

13.    First American Financial Corporation is a for-profit financial services corporation with numerous subsidiaries, including Defendants First American Title Company and First American Title Insurance Company.  First American Title Company and First American Title Insurance Company are for-profit corporations whose businesses primarily consist of title insurance, settlement, and escrow services for real estate.  First American is one of the largest title insurance providers in the nation.

14.    First American routinely uses an online "portal" system to allow its customers and insurees to upload and download mortgage documents as part of the insurance process.  Such portals are routine in insurance services and are always and without exception expected to be secure.

15.    Mortgage documents needed to obtain title insurance routinely and almost inevitably include highly sensitive financial records, bank and wire routing instructions, personal identity documents, such as driver's licenses, bank statements, and corporate financial records.

16.    In the week of May 24, 2019, a customer of First American noticed that simply by changing one number of a URL, which he was given to upload mortgage documents, he was able to view virtually every other mortgage document uploaded to First American's website, all the way back to 2003.[4]

17.    These mortgage documents included "wire transactions with bank account numbers and other information from home or property buyers and sellers," as well as "all kinds of documents from both the buyer and seller, including Social

_____

[4]    *See supra* note 1.

- 4 -

Security numbers, driver's licenses, account statements, and even internal corporate documents if you're a small business."[5]

18.    After being notified of the situation, respected security blogger Brian Krebs conducted his own investigation and discovered that approximately 885 million records had been publicly exposed by First American.[6]

19.    As dangerous as Defendant's conduct is on its face, however, even more dangerous is that search engines and bots can and will continue to cache – or even actively store – these pages for months or even years.[7]  While First American has stated that it is working to have these cached pages removed, bots like The Internet Archive's Wayback Machine intentionally save and index billions of pages from all over the web every day.  Some are done with malicious intent, but many bots simply index for historical preservation purposes.  There is simply no way for First American to be wholly certain it has ever collected every duplicated or cached copy of every sensitive document exposed online.

20.    Defendant's website states, in relevant part:

**We Are Committed to Safeguarding Customer Information**

In order to better serve your needs now and in the future, we may ask you to provide us with certain information. We understand that you may be concerned about what we will do with such information - particularly any personal or financial information. We agree that you have a right to know how we will utilize the personal information you provide to us.

* * *

_____

[5]    *Id.*
[6]    *Id.*
[7]    *See supra* note 3.

- 5 -

Therefore, we will not release your information to nonaffiliated parties except: (1) as necessary for us to provide the product or service you have requested of us; or (2) as permitted by law.[8]

**The Effect of the Data Breach on Plaintiff and the Class**

21.    Plaintiff and the Class now face a real, immediate, and continuing risk of identity theft and fraudulent transfers and accounts resulting from Defendant's actions.

22.    The processes of discovering and dealing with the repercussions of identity theft and fraudulent payments and accounts are time consuming and difficult.    The Bureau of Justice Statistics found that "among victims who had personal information used for fraudulent purposes, 29% spent a month or more resolving problems."[9]

23.    The victims here, Plaintiff and the Class, are no different, as they are faced with an arduous path to secure their SPI in response to Defendant's negligence.    Plaintiff and the Class must now take the following steps to attempt to prevent further misuse of their SPI:

- Review and monitor bank accounts for any unusual or unknown charges.
- Contact their financial institution to determine if there is any suspicious activity on their accounts.
- Change their account information.
- Place a fraud alert on their credit bureau reports.

---

[8]    *Privacy Information*, FIRST AMERICAN, https://www.firstam.com/privacy-policy/ (last visited May 28, 2019).

[9]    Erika Harrell and Lynn Langton, *Victims of Identity Theft, 2012*, BUREAU OF JUSTICE STATISTICS 1 (Dec. 2013), http://www.bjs.gov/content/pub/pdf/vit12.pdf.

- Place a security freeze on their credit bureau reports.

- Periodically monitor their credit bureau reports for any unusual activity and check for accuracy.

24.    Additionally, there is commonly lag time between when harm occurs and when it is discovered and also between when SPI is stolen and when it is used. According to the U.S. Government Accountability Office, which conducted a study regarding data breaches:

> [L]aw enforcement officials told us that in some cases, stolen data may be held for up to a year or more before being used to commit identity theft.  Further, once stolen data have been sold or posted on the Web, fraudulent use of that information may continue for years. As a result, studies that attempt to measure the harm resulting from data breaches cannot necessarily rule out all future harm.[10]

25.    In this case, lag time can be years or decades as Plaintiff and the Class's information may continue to be available online through third-party bots and search programs.

26.    There is a very strong probability that those impacted by Defendant's failure to secure the SPI could be at risk of fraud and identity theft for extended periods of time.

27.    As a result of Defendant's negligent security practices, Plaintiff and the Class have been exposed to fraud and face a heightened and imminent risk of fraud and identity theft.  Plaintiff and the Class must now and in the future closely monitor their financial accounts to guard against identity theft and fraudulent charges and accounts.  Plaintiff and the Class may be faced with fraudulent debt or incur costs

---

[10]    *Data Breaches Are Frequent, but Evidence of Resulting Identity Theft Is Limited; However, the Full Extent Is Unknown* U.S. Government Accountability Office, GAO Report to Congressional Requesters 29 (June 2007), http://www.gao.gov/new.items/d07737.pdf.

for, among other things, paying monthly or annual fees for identity theft and credit monitoring services and obtaining credit reports, credit freezes, and other protective measures to deter, detect, and mitigate the risk of identity theft and fraud. Some have already incurred costs in doing so.

## CLASS ACTION ALLEGATIONS

28.    Plaintiff brings this action on behalf of itself and as a class action under Federal Rules of Civil Procedure 23(a), (b)(2) and (b)(3), seeking damages and equitable relief on behalf of the following Class:

> All persons whose SPI was accessed, exposed, and/or compromised by unauthorized individuals as part of the data breach at issue in this litigation.

29.    Plaintiff also brings this action on behalf of itself and as a class action under Federal Rules of Civil Procedure 23(a), (b)(2) and (b)(3), seeking damages and equitable relief on behalf of the following Subclass:

> All New York residents whose SPI was accessed, exposed, and/or compromised by unauthorized individuals as part of the data breach at issue in this litigation.

30.    Excluded from the Class are: Defendant, any parents, affiliates, or subsidiaries of Defendant; any entity in which Defendant has a controlling interest; any of Defendant's officers or directors; any successor or assignee of Defendant; and any entity with whom Defendant contracts for title insurance services. Also excluded is any Judge assigned to this case.

31.    The Class is so numerous that joinder of all members is impracticable. While Plaintiff does not know the exact number of the members of the Class, Plaintiff believes it contains at least tens of thousands of members.

32.    Common questions of law and fact exist as to all members of the Class. Such questions of law and fact common to the Class include, but are not limited to:

> a.    Whether Defendant engaged in the wrongful conduct alleged herein;

- 8 -

b.    Whether Defendant owed a duty to Plaintiff and members of the Class to adequately protect their SPI;

c.    Whether Defendant breached its duty to adequately protect the SPI of Plaintiff and members of the Class;

d.    Whether Defendant should have known that its data systems and processes were vulnerable to attack and taken sufficient steps to prevent such attack;

e.    Whether Defendant's conduct, including its failure to act, was the proximate cause of, or resulted in, the breach of its database containing SPI;

f.    Whether Defendant's conduct constituted a violation of New York General Business Law § 349;

g.    Whether Plaintiff and members of the Class suffered legally cognizable damages as a result of Defendant's conduct and are entitled to recover damages; and

h.    Whether Plaintiff and members of the Class are entitled to equitable relief.

33.    Plaintiff's claims are typical of the claims of the members of the Class, and Plaintiff will fairly and adequately protect the interests of the Class. Plaintiff and all members of the Class are similarly affected by Defendant's wrongful conduct in that their information was exposed to unauthorized users in violation of federal, state and common law.

34.    Plaintiff's claims arise out of the same common course of conduct giving rise to the claims of the other members of the Class. Plaintiff's interests are coincident with, and not antagonistic to, those of the other members of the Class. Plaintiff is represented by counsel who are competent and experienced in the prosecution of security breach and class action litigation.

35.    The questions of law and fact common to the members of the Class predominate over any questions affecting only individual members, including legal and factual issues relating to liability and damages.

36.    Class action treatment is a superior method for the fair and efficient adjudication of the controversy, in that, among other things, such treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently and without the unnecessary duplication of evidence, effort and expense that numerous individual actions would engender.    The benefits of proceeding through the class mechanism, including providing injured persons or entities with a method for obtaining redress for claims that might not be practicable to pursue individually, substantially outweigh any difficulties that may arise in management of this class action.

37.    The prosecution of separate actions by individual members of the Class would create a risk of inconsistent or varying adjudications, establishing incompatible standards of conduct for Defendant.

## FIRST CLAIM FOR RELIEF
### Negligence
### (On Behalf of Plaintiff and the Class)

38.    Plaintiff incorporates all prior paragraphs as though fully set forth herein.

39.    Defendant solicited and took possession of the SPI of Plaintiff and the Class and had a duty to exercise reasonable care in safeguarding and protecting that information from unauthorized access or disclosure.  The duty included maintaining and testing Defendant's security systems and taking other reasonable security measures to protect and adequately secure the SPI from unauthorized access and use.  Defendant further had a duty to destroy the SPI of Plaintiff and the Class within an appropriate amount of time after it was no longer required in order to mitigate the risk of such non-essential SPI being compromised in a data breach.

- 10 -

1    Defendant finally had a duty to take necessary steps to promptly stop any further
2    breach of customer data once Defendant was made aware of the breach.

3        40.    Defendant's duties arose from its relationship to Plaintiff and the
4    Class and from industry custom.

5        41.    Defendant, through its actions and/or failures to act, unlawfully
6    breached duties to Plaintiff and the Class by failing to implement standard industry
7    protocols, to exercise reasonable care to secure and keep private the SPI entrusted
8    to it, and to take any necessary steps to immediately end the ongoing breach once
9    Defendant became aware of it.

10        42.    Defendant's failure to exercise reasonable care in safeguarding the
11    SPI of Plaintiff and the Class by adopting appropriate security measures, including
12    encryption, was the direct and proximate cause of the SPI of Plaintiff and the Class
13    being accessed and stolen through the data breach.

14        43.    It was foreseeable that if Defendant or its agents did not take
15    reasonable security measures, the SPI of Plaintiff and the Class would be stolen.
16    Companies like Defendant face a high threat of data breaches due in part to the
17    large amounts and type of information they store and the value of such information
18    on the black market.  Defendant should have known to take all reasonable
19    precautions to secure customers' SPI, especially in light of recent data breaches
20    and publicity regarding such breaches.

21        44.    As a result of Defendant's breach of duties, Plaintiff and the Class
22    have been injured and have suffered damages, including but not limited to time,
23    effort, and money spent monitoring accounts and requesting credit holds, freezes,
24    and checks.

25        45.    Defendant's negligence was a substantial factor in causing harm to
26    Plaintiff and the Class.

27

28

46.    Plaintiff and the Class seek compensatory damages and punitive damages with interest, the costs of suit and attorneys' fees, and any other relief as the Court deems just and proper.

## SECOND CLAIM FOR RELIEF
### Unjust Enrichment
### (On behalf of Plaintiff and the Class)

47.    Plaintiff incorporates all prior paragraphs as though fully set forth herein.

48.    Plaintiff and the Class conferred a benefit on Defendant by providing their SPI to Defendant, as well as making monetary payments, in exchange for convenience in the purchase of Defendant's services.

49.    Defendant appreciated, accepted and retained the benefit bestowed upon it under inequitable and unjust circumstances arising from Defendant's conduct toward Plaintiff and the Class as described herein.

50.    Defendant should be compelled to disgorge into a common fund for the benefit of Plaintiff and the Class all unlawful and inequitable proceeds it received.

51.    The Court should impose a constructive trust upon all unlawful or inequitable sums received by Defendant traceable to Plaintiff and the Class.

## THIRD CLAIM FOR RELIEF
### Violation of New York General Business Law § 349, *et seq.*
### (On Behalf of Plaintiff and the New York Subclass)

52.    Plaintiff incorporates all prior paragraphs as though fully set forth herein.

53.    Defendant is a "business" within the meaning of New York General Business Law § 349.

54.    Defendant represented that Plaintiff and the New York Subclass's SPI would be adequately safeguarded when it was not.

55.     Such acts by Defendant are and were deceptive acts or practices which are and/or were likely to mislead a reasonable consumer purchasing title insurance from Defendant or its agents. Said deceptive acts and aforementioned practices are material. The sale and distribution in New York of title insurance was and is a consumer-oriented act in that Defendant's web-based services were designed for ease of use for consumer transactions conducted through Defendant's website, and thereby falls under New York General Business Law § 349.

56.     A causal relationship exists between Defendant's unlawful conduct and losses suffered by Plaintiff.  As a direct and proximate result of Defendant's deceptive trade practices, Plaintiff and New York Subclass members suffered injury and/or damages.

57.     Defendant's wrongful conduct caused Plaintiff and the New York Subclass to suffer an ascertainable loss by exposing their SPI publicly.  If Plaintiff and the New York Subclass members had been informed about Defendant's actual practices with regard to their SPI, they would not have purchased title insurance from Defendant, or would have paid less for it.

58.     Plaintiff and the New York Subclass members seek relief under New York General Business Law § 349(h), including, but not limited to, actual damages, treble damages, statutory damages, injunctive relief, and attorneys' fees and costs.

59.     Based on the foregoing, Plaintiff and the New York Subclass have been injured in an amount to be determined at trial.

## REQUESTS FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that the Court enter judgment against Defendant as follows:

a.     Certification of the Class and Subclass as requested herein;

b.     Appointment of Plaintiff as Class Representative and its undersigned counsel as Class Counsel;

- 13 -

c.   Award Plaintiff and the proposed Class and Subclass all available damages, restitution and disgorgement;

d.   Award Plaintiff and the proposed Class and Subclass equitable and declaratory relief;

e.   An order declaring that Defendant's acts and practices with respect to the safekeeping of SPI are negligent;

f.   Award Plaintiff and the proposed Class and Subclass pre-judgment and post-judgment interest as permitted by law;

g.   Award Plaintiff and the proposed Class and Subclass reasonable attorneys' fees and costs of suit, including expert witness fees; and

h.   Award Plaintiff and the proposed Class and Subclass any further relief the Court deems proper.

## <u>DEMAND FOR TRIAL BY JURY</u>

Plaintiff hereby demands a trial by jury.

DATED:  May 30, 2019                    **WOLF HALDENSTEIN ADLER FREEMAN & HERZ LLP**


_____/s/ Rachele R. Byrd_____
RACHELE R. BYRD


RACHELE R. BYRD
byrd@whafh.com
BRITTANY N. DEJONG
dejong@whafh.com
750 B Street, Suite 1820
San Diego, CA 92101
Telephone:  619/239-4599
Facsimile:   619/234-4599

*Counsel for Plaintiff*

804739.v3

- 14 -